**In re Bruce George FREDERES, Debtor.**

**Robert S. COOPER, Trustee, Plaintiff,**

**v.**

**Louise H. FREDERES, Defendant.**

**Bankruptcy No. 89–20844.**
**Adv. No. 91–2196.**

United States Bankruptcy Court,
W.D. New York.

June 5, 1992.

Angelo T. Calleri, Rochester, N.Y., for defendant.

Robert S. Cooper, Chapter 7 Trustee, Rochester, N.Y.

## MEMORANDUM AND DECISION

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On May 10, 1989 Bruce George Frederes (the "Debtor") filed a petition initiating a Chapter 7 case. On Schedule B–1 the Debtor listed as an asset 115 acres of vacant land at 4819 Congdon Road, East Williamson, New York (the "Congdon Road Property") with a market value of $175,000. The schedule indicated that the deed to the property was in his wife's name only, the Debtor's interest was to be determined through divorce proceedings, and there was a matrimonial action pending between the Debtor and the defendant, Louise H. Frederes ("Louise Frederes"), in the Supreme Court of Ontario County, New York ("Supreme Court").

On August 21, 1991 the Supreme Court granted a Judgment of Divorce which provided that the Congdon Road Property would be retained by Louise Frederes and directed the Debtor to transfer all of his right, title and interest in and to the property by quitclaim deed. The Judgment of Divorce further directed the Debtor to execute two quitclaim deeds, one to be delivered to Louise Frederes and the second to be delivered to her attorney to be held in escrow pending the closing of the Debtor's bankruptcy proceeding. This treatment of the Congdon Road Property had been agreed to by a February 8, 1991 oral stipulation of the parties which was placed on the record before the Supreme Court. In its August 21, 1991 separate Findings of Fact which accompanied the Judgment of Divorce, the Supreme Court found that the terms of the stipulation were fair and reasonable when made, were not unconscionable at the time the judgment was to be entered, and would be incorporated into the Judgment of Divorce.

On November 11, 1991 the Debtor's trustee (the "Trustee") commenced an adversary proceeding against Louise Frederes pursuant to 11 U.S.C. § 542 claiming that the defendant was in possession, custody or control of property of the estate or proceeds of the estate, including but not limited to the Congdon Road Property. The Trustee alleged, based on the testimony of the Debtor at his § 341 Meeting, that the Debtor contributed towards the purchase of and made payments for the maintenance of and on the mortgages against the Congdon Road Property, and that the value of the Debtor's one-half equity interest in the property was $27,672.50.

The December 2, 1991 answer interposed on behalf of Louise Frederes alleged that she was the sole owner of the Congdon Road Property, the Debtor did not have any legal or equitable interest in the property at the time of the filing of his bankruptcy petition and the property was not property of the bankruptcy estate subject to turnover.

By motion returnable April 6, 1992, the Trustee moved for summary judgment. In his motion papers the Trustee again alleged that the Debtor contributed towards the purchase of the Congdon Road Property and that he made payments for the maintenance and repair of the property and on the mortgages against the property. The Trustee stated that the property was titled in the name of Louise Frederes only, because the Debtor did not want any property in his name since there were Internal Revenue Service tax liens which had been filed against him. The Trustee also alleged that the Debtor had an equitable interest in the Congdon Road Property and therefore it was property of the estate as defined in 11 U.S.C. § 541(a)(1), since the property at the time of the filing of the Debtor's petition was "marital property" within the meaning of Section 236 of the New York Domestic Relations Law subject to disposition by an award of equitable distribution by the Supreme Court.

The answering affidavit of Louise Frederes in response to the motion for summary judgment alleged that the Congdon

Road Property was always in her name only, all of the mortgages placed on the property since its purchase by her were in her name only, and all payments for real estate taxes and on the mortgages against the property were made from her independent earnings which had been deposited into her separate bank accounts. She alleged that absolutely none of the Debtor's monies were used in making payments for real estate taxes, maintenance or on any of the mortgages against the property. Louise Frederes did acknowledge in her affidavit, however, that the Debtor co-signed an August 26, 1987 adjustable rate note executed at the time when all prior mortgages on the property were consolidated. As an exhibit to her affidavit Louise Frederes attached copies of all checks and other payments for mortgages and real estate taxes in connection with the Congdon Road Property showing that they were made from bank accounts maintained in her name only. Finally, Louise Frederes alleged that a number of prior actions by the Debtor, such as giving his brother $20,000 of her funds without her consent, made her believe that she could not fully trust him and caused her to purchase the Congdon Road Property in her sole name.

In an April 21, 1992 responding affidavit the Trustee stated: "The purpose of this motion for summary judgment, is to establish as a matter of law, that the debtor's right to an equitable distribution under the New York State Domestic Relations Law, in a divorce action pending at the time a Chapter 7 bankruptcy petition was filed, is property of the Chapter 7 bankruptcy estate pursuant to 11 U.S.C. § 541(a)."

## DISCUSSION

■ Although the question of what is property of the estate under Section 541(a) is a federal question, property rights are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct.

914, 918, 59 L.Ed.2d 136 (1979). It is state law that determines whether the debtor's interest in any particular item of property is sufficient to confer a property right on the bankruptcy estate under Section 541(a). *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1101 (2d Cir.1990).

The Trustee relies heavily on *In re Palmer,* 78 B.R. 402 (Bankr.E.D.N.Y.1987) and *In re Hursa,* 87 B.R. 313 (Bankr.D.N.J. 1988) to support his position that the Congdon Road Property, which the parties admit is "marital property" as defined in Section 236 of the New York Domestic Relations Law, is property of the estate within the meaning of 11 U.S.C. § 541(a)(1).[1] The Trustee asserts that the Debtor had an equitable interest in this marital property since it was subject to an award of equitable distribution in the pending matrimonial proceeding.

These cases so heavily relied on by the Trustee deal with property jointly owned by the Debtor and a non-debtor spouse involved in a pending matrimonial action at the time of the filing of the bankruptcy petition. In those cases, the Debtor clearly had a legal interest in the assets and therefore these assets were property of the estate under Section 541. In this case, however, the Congdon Road Property was not jointly owned by the Debtor but title to the property was in the name of the non-debtor spouse only.

■ This Court agrees with the Bankruptcy Court and the District Court in *In re Hilsen,* 100 B.R. 708 (Bankr.S.D.N.Y. 1989) (citing *Leibowits v. Leibowits,* 93 A.D.2d 535, 462 N.Y.S.2d 469, 478 (App. Div.2d Dep't 1983)) *rev'd. on other grounds,* 119 B.R. 435 (S.D.N.Y.1990), that in New York rights in equitable distribution vest only when there is an actual judgment of divorce awarding distribution of marital property. There are no vested present or contingent property rights or

---

1. § 541. Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

interests, legal or equitable, in such marital property solely because it is marital property under the New York Domestic Relations Law. *Hilsen*, 100 B.R. 708, 711 (Bankr. S.D.N.Y.1989). Therefore, since there had not been an equitable distribution award when the Debtor filed his petition and his only potential interest in the Congdon Road Property was because it was marital property, neither he, nor the bankruptcy estate, had any legal or equitable interest in the property within the meaning of 11 U.S.C. § 541(a)(1).

If in the pending matrimonial action the Supreme Court had made an award of an interest in the Congdon Road Property in favor of the Debtor within 180 days of the date of the filing of his petition, such an interest would have become property of the estate in accordance with the provisions of 11 U.S.C. § 541(a)(5).[2] Because it is not until the debtor acquires an interest in marital property by a property settlement

agreement or a divorce decree that such an interest becomes property of the estate, Section 541(a)(5) is consistent with New York law.

The principal concern of the Trustee in bringing his motion, as expressed by him on a number of occasions including a pretrial conference, oral argument on the motion for summary judgment and in subsequent submissions to the Court, is that the State Court justices[3] in making determinations of equitable distribution do not consider the interests of the creditors of a debtor spouse whose debts have been discharged in a pending bankruptcy proceeding. In this regard the Court notes that Section 236 of the New York Domestic Relations Law sets forth thirteen specific factors that the State Court justice in considering the circumstances of the case and of the respective parties must consider in making an equitable disposition of property between the parties.[4] Clearly these factors

---

**2.** (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, device, or inheritance;

(B) as a result of a property settlement agreement with debtor's spouse, or of an interlocutory or final divorce decree;

**3.** The whole subject of domestic relations belongs to state law. *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 852–853, 34 L.Ed. 500 (1890). To the extent no overriding compelling federal question exists, Federal Courts will not interject themselves into a state court matrimonial proceeding. *Ohio ex. rel. Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930).

"Indeed, to the extent that the state matrimonial court adjudicates personal rights, custodial relationships, and property entitlements, not only is there no overriding compelling federal question, but except to the extent specifically enumerated in 28 U.S.C. § 157, the bankruptcy court clearly has no jurisdiction to adjudicate such matters." *In re Hilsen*, 100 B.R. 708, 710 (Bankr.S.D.N.Y.1989).

**4.** d. In determining an equitable disposition of property under paragraph c, the court shall consider:

(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;

(2) the duration of the marriage and the age and health of both parties;

(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;

(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;

(5) any award of maintenance under subdivision six of this part;

(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

(7) the liquid or non-liquid character of all marital property;

(8) the probable future financial circumstances of each party;

(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;

(10) the tax consequences to each party;

(11) the wasteful dissipation of assets by either spouse;

(12) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;

(13) any other factor which the court shall expressly find to be just and proper.

do not include the interests of the creditors of a debtor spouse whose debts have been discharged in a pending bankruptcy proceeding. The Trustee expresses concern that the State Court justices making equitable distribution awards in most cases would, and perhaps given their statutory direction should, completely ignore the interests of those creditors in such circumstances. The Trustee further speculates that if all marital property is not held to be property of the estate under Section 541, a trustee in circumstances such as those presented in this case will have absolutely no standing in the State Court to plead the equities of the estate and the creditors, either at the time any property settlement agreement or stipulation is to be entered into, or at the time of the entry of a divorce decree. This would be so even in a case where there are substantial marital property assets in the name of the non-debtor spouse and a portion of those assets could go to the debtor's creditors without leaving the non-debtor spouse seriously economically impacted. As pointed out by the Trustee, the debtor spouse in such circumstances most often has no reason to promote the interests of his or her creditors. Even in such an appropriate case, the Trustee speculates that the state courts are unlikely to consider the interests of the creditors of the debtor spouse, since the applicable New York State statute only directs the justices to do equity between the parties to the matrimonial dispute not equity in general.

In the last decade there have been substantial increases in both bankruptcy filings and divorce actions. Numerous commentators have expressed the concern that these two growing areas of the law have been developing in parallel with little or no integration. Often, as in this case, rights and interests of various parties are directly or indirectly involved in both proceedings, but neither legislative body appears to have fully taken into account the ramifications and impact of one proceeding on the other or the overlapping rights and interests of the various parties involved. Creditors, trustees, attorneys, both commercial and matrimonial, and the courts would welcome clear legislative guidance on the respective rights and priorities of the parties to matrimonial actions and their creditors.

## CONCLUSION

Since under New York law the Debtor had no vested legal or equitable property interests in the Congdon Road Property at the time of the filing of his petition, even though such property was marital property as defined by the New York Domestic Relations Law and was subject to a possible award of equitable distribution, the property was not property of the estate within the meaning of 11 U.S.C. § 541(a)(1), and thus was not subject to turnover pursuant to 11 U.S.C. § 542.

Therefore, the Debtor's motion for summary judgment brought to determine this legal issue is in all respects denied. Whether the Debtor may have had or has any legal or equitable rights in the property for reasons other than it being marital property involves the resolution of numerous questions of fact which would have to be determined at trial.

IT IS SO ORDERED.