**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1260-23

DAVID AMARILLA,

     Plaintiff-Respondent,

v.

JORGE ROSALES,

     Defendant-Respondent.

_____

SHARON ROSALES,

     Appellant.

_____

        Submitted December 17, 2024 – Decided December 30, 2024

        Before Judges Perez Friscia and Bergman.

        On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000072-21.

        Pierre Emmanuel Almonacy, attorney for appellant.

        Sellar Richardson, PC, attorneys for respondent David Amarilla (Shawn R. Stowell, of counsel and on the brief; Marc B. Schuley, on the brief).

Ashton E. Thomas, attorney for respondent Jorge Rosales.

PER CURIAM

Appellant Sharon Rosales appeals from the November 17, 2023 Chancery Division order denying reconsideration of an October 12, 2023 order, which denied her motion to intervene in plaintiff David Amarilla's quiet title action against appellant's husband, defendant Jorge Rosales. After reviewing the record, parties' arguments, and applicable legal principles, we affirm.

I.

On December 2, 2020, defendant entered into a real estate contract to sell plaintiff a multiple-unit residential property located in Linden. The contract provided a purchase price of $559,900 for the property, and the closing was scheduled for January 27, 2021. Defendant lived in one of the residential units with appellant, his spouse. Defendant was the sole owner on the property's deed.

In January, defendant advised plaintiff he needed a three-month use and occupancy agreement after closing. Plaintiff refused to modify the terms of the sale. In February, plaintiff sent defendant a time of the essence notice, providing a February 23 closing date, but defendant responded he was "unable to proceed with th[e] transaction due to unforeseen circumstances."

After the closing on the property did not occur, plaintiff filed a verified complaint and an order to show cause on June 3 to compel the sale. On June 9, the Chancery Division entered an order directing defendant to show cause why specific performance should not be granted along with other requested relief. The court's order required plaintiff to serve defendant within three days of the order's date and issued a July 9 return date. Defendant filed an answer with the assistance of new counsel, and the parties thereafter conducted discovery. After hearing argument, the court granted plaintiff's application for a lis pendens on the property and enjoined defendant from selling the property to a third party, but denied specific performance without prejudice. In January 2022, on the eve of trial, the parties entered into a settlement agreement, which provided defendant would sell plaintiff the property, and the closing had to occur no later than April 15. The agreement permitted no extension beyond May 15. The court had the parties place the terms of the settlement agreement on the record.

Appellant learned of the property sale from defendant and his counsel in January 2022. She advised them she would not sign the deed to sell the property. Appellant knew defendant's attorney, who represented him during the settlement, because the attorney had represented her in an unrelated matter.

3

In July 2022, because defendant had not proceeded with the property's closing, plaintiff moved to enforce the settlement, seeking specific performance. Defendant's responding certification in opposition provided: he was married to appellant; "the subject property is the marital home"; and appellant advised she would not "sign the [d]eed to extinguish her interest in the property." Further, defendant attested that during the Chancery Division litigation, he believed selling the property "would [not] be an issue," but he could not "force [his] wife" to sign the deed. The title insurance company's commitment stated defendant received vested title to the property by a deed from Maria Rosales dated February 21, 2011.

On August 5, 2022, the court granted plaintiff's motion to enforce the settlement and compel defendant to sell the property. Further, it found "any purported right [appellant] ha[d] under N.J.S.A. 3B:28-3 to possess or occupy the land ha[d] been terminated by order or judgment of this [c]ourt." The court reasoned, "It [wa]s clear to the [c]ourt that [d]efendant wishe[d] to comply with the terms of the settlement agreement," and defendant did not establish appellant's interest in the property. The court granted defendant a "limited power of attorney to sign" the necessary documents to effectuate the sale on appellant's behalf.

On March 17, 2023, plaintiff filed a Law Division breach of contract action against defendant and appellant for monetary damages. Defendant and appellant each filed answers and third-party complaints alleging negligence against the realtors and legal malpractice against defendant's closing attorney. They thereafter moved to amend their third-party complaints to add legal malpractice claims against defendant's second attorney. The court denied defendant's motion to amend. On December 11, defendant filed a separate legal malpractice complaint against his second attorney.

On September 13, plaintiff moved to quiet title to the property. Defendant opposed plaintiff's motion, asserting appellant "was never given an opportunity to intervene." On September 29, about twenty months after the court had entered the order requiring defendant to sell the property to plaintiff, appellant moved to intervene. Appellant certified that she married defendant in July 2013 (as evidenced by the marriage certificate exhibit), they have a child together, and they reside in the residence with her daughter from a prior marriage. She asserted that while the parties knew of her interest in the property, she was "never served with pleadings" and "would never have agreed to sell the property, had [she] known of the existence of the contract." In her October 2023 affidavit,

appellant attested to learning of defendant's agreement to sell the property after the settlement agreement was entered with plaintiff on January 21, 2022.

On October 12, 2023, the court issued an order granting plaintiff's motion to enforce the settlement and requiring defendant to effectuate the sale of the property. The court denied appellant's motion to intervene. In denying intervention, the court noted appellant was not listed on the deed, and defendant's marriage to her was never disclosed to plaintiff or the court prior to the July 2022 enforcement proceeding. The court found appellant's motion to intervene was untimely because she knew of plaintiff's Chancery Division enforcement action prior to the court's August order requiring defendant to sell the property, yet appellant did not seek to intervene in the action. The court also noted that after plaintiff sued appellant in the Law Division action in March 2023, she still did not move to intervene. The record demonstrated that appellant was served plaintiff's Law Division complaint on March 29, 2023.

The court concluded its August 2022 order enforcing the property's sale had terminated appellant's interest under N.J.S.A. 3B:28-3. It noted plaintiff was an innocent party, and appellant's failure to intervene "for well over a year" had worsened his losses. Acknowledging appellant's property interest and potential right to monetary damages, the court weighed the applicable equitable

principles and found appellant was not without a remedy because she could file a cross-claim against her husband for damages in the Law Division action and bring other potential negligence claims.

Appellant thereafter moved for reconsideration, which the court denied on November 17. Based on appellant's certification, the court found she knew that defendant had entered into an agreement to sell the property "since at least January 21, 2022 [but] failed to take any action until September 2023." After again considering the relevant equitable maxims and principles, the court found appellant's arguments were unpersuasive and declined to exercise equitable discretion to permit late intervention. The court highlighted the equitable maxim that "[w]here a loss must be borne by one of two innocent persons, equity will impose the loss on that party whose act first could have prevented the loss," and found it was directly relevant because appellant "could have prevented this loss if [she] took action" earlier. It determined plaintiff should not "bear the loss," because appellant knew of defendant's obligation to sell the property no later than January 2022, yet she waited until September 2023 to take any action. The court also addressed the equitable maxim "equity aids the vigilant, not those who sleep on their rights," finding that had appellant acted upon learning "the [p]roperty was going to be sold due to a contract and agreement entered into by

7

[defendant], she would likely [have] been in a materially different position." It concluded, "[H]er indifference and lack of participation in this action until [p]laintiff sought to enforce litigant's rights for a second time mean[t] that she cannot be aided by equity in the present matter."

On appeal, appellant contends the court erred in denying her motion to intervene, "violat[ing] her rights to due process under both the [f]ederal and [s]tate [c]onstitutional [l]aw."[1]

## II.

"Our [r]ules of [c]ourt govern intervention at trial, and the trial court's interpretation of those rules is subject to our de novo review." M.M. v. Dep't of Child., 479 N.J. Super. 471, 485 (App. Div. 2024) (quoting N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 285 (App. Div. 2018)). Rule

---

[1] On appeal, defendant argues reversal is warranted, and we should direct "the matter be consolidated with the Law Division matter pending." "[I]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)) (internal quotation marks omitted). We decline to consider defendant's newly raised argument.

4:33-1 establishes four criteria to intervene as of right. To successfully intervene the moving party must:

> (1) claim "an interest relating to the property or transaction which is the subject of the transaction," (2) show [that the movant] is "so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest," (3) demonstrate that the "[movant's] interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene.
>
> [Exxon Mobil Corp., 453 N.J. Super. at 286 (alterations in original) (quoting Am. Civ. Liberties Union of N.J., Inc. v. County of Hudson, 352 N.J. Super. 44, 67 (App. Div. 2002)).]

"As the rule is not discretionary, a court must approve an application for intervention as of right if the four criteria are satisfied." Ibid. (quoting Meehan v. K.D. Partners, L.P., 317 N.J. Super. 563, 568 (App. Div. 1998)).

"Intervention after final judgment is allowed, if necessary, to preserve some right which cannot otherwise be protected." CFG Health Sys., LLC v. County of Essex, 411 N.J. Super. 378, 385 (App. Div. 2010) (quoting Chesterbrooke Ltd. P'ship v. Plan. Bd. of Chester, 237 N.J. Super. 118, 123 (App. Div. 1989)). "Whether intervention as of right should be granted may be determined by evaluating the extent to which a grant 'of the motion will unduly delay or prejudice the rights of the original parties.'" Am. Civil Liberties Union

of N.J., Inc., 352 N.J. Super. at 69 (quoting Atl. Emps. Ins. Co. v. Tots & Toddlers Pre-Sch. Day Care Ctr., 239 N.J. Super. 276, 280 (App. Div. 1990)).

However, an appellate court reviews an order denying reconsideration for abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A court abuses its discretion "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024) (quoting Kornbleuth v. Westover, 241 N.J. 289, 302 (2020)).

III.

Appellant argues the court's order denying intervention violated her constitutional right to due process because she was deprived of an opportunity to intervene before she was stripped of "her property interest secured by N.J.S.A. 3B:28-3." She further contends the court's order must be vacated and intervention should be permitted because she was not provided "notice from the [c]ourt" of the Chancery Division action.

It is undisputed appellant was married to defendant and resided at the Linden property with him. While appellant was not listed on the deed, pursuant to N.J.S.A. 3B:28-3 she has a recognized property interest. N.J.S.A. 3B:28-3 states:

10

a. During life every married individual shall be entitled to joint possession with his spouse of any real property which they occupy jointly as their principal matrimonial residence and to which neither dower nor curtesy applies. One who acquires an estate or interest in real property from an individual whose spouse is entitled to joint possession thereof does so subject to such right of possession, unless such right of possession has been released, extinguished or subordinated by . . . order or judgment of a court of competent jurisdiction or otherwise.

b. Nothing contained herein shall be construed to prevent the release, subordination or extinguishment of the right of joint possession by either spouse, by premarital agreement, separation agreement or other written instrument.

c. The right of joint possession shall be extinguished by the consent of both parties, by the death of either spouse, by judgment of divorce, separation or annulment, by other order or judgment which extinguishes same, or by voluntary abandonment of the principal matrimonial residence.

We have recognized that N.J.S.A. 3B:28-3[2] "establish[ed] the rights of both spouses in their 'principal matrimonial residence' [and] was enacted concurrently with the repeal of dower and curtesy[,] and the adoption of a surviving spouse's elective share in the estate of a deceased spouse." Arnold v. Anvil Realty Inv., Inc., 233 N.J. Super. 481, 484 (App. Div. 1989) (footnote

_____

[2] The Legislature amended N.J.S.A. 3B:28-3 in 2005.

omitted). A salient statutory purpose was to "preserv[e] marital assets pending equitable distribution." Id. at 486; see also In re Rosa, 261 B.R. 136, 139 (Bankr. D.N.J. 2001) ("Conveyance of the marital residence by the spouse who holds title without the consent of the other spouse does not extinguish the other spouse's right to joint possession."). The statute authorizes a court to extinguish by order or judgment a spouse's right of possession. N.J.S.A. 3B:28-3.

We turn to consider appellant's contention that the court erred in not permitting her late intervention as of right. The court correctly recognized appellant's established interest in the property, which satisfied the first criteria for intervention. Further, considering the third criteria, appellant sufficiently demonstrated defendant had not "adequately represented" her interests. R. 4:33-1. Pursuant to Rule 4:33-1, the court focused on the timeliness of appellant's application and her "ability to protect [her] interest."

Appellant conceded that as of January 2022, she knew defendant was bound to sell their marital property to plaintiff. She had contemporaneously advised defendant's attorney at the time that she would not sign the deed to sell the property. Appellant waited approximately twenty months after learning of defendant's obligation to sell the property before she moved to intervene in the post-judgment Chancery Division action. After plaintiff moved to enforce the

12

settlement agreement in July 2022, defendant opposed the motion, stating appellant would not agree to the sale. Defendant referenced his attorney's letter sent to plaintiff's attorney, advising that appellant "d[id] not agree to sell." Notably, after the court's August 2022 order granted plaintiff's motion to enforce the property's sale and authorized defendant to sign documents on appellant's behalf, defendant did not seek reconsideration, and appellant did not move to intervene. Appellant only cross-moved to intervene after plaintiff again moved in September 2023 to quiet title to the property.

"On the issue of timeliness," the court correctly "consider[ed] the purpose of the intervention motion in relation to the stage in the action when the motion was made." Chesterbrooke Ltd. P'ship, 237 N.J. Super. at 125. As the court observed, appellant failed "to assert her rights until [p]laintiff filed his second motion to enforce [the] settlement." Plaintiff and defendant had entered the real estate contract in December 2020, almost three years earlier, and plaintiff had filed the Chancery Division action seeking specific performance in June 2021. Appellant offered no explanation for the extended twenty-month delay in seeking to intervene although she acknowledged being cognizant of plaintiff's attempts to close on the property. We concur with the court's finding that plaintiff suffered prejudice from appellant's long delay. The court correctly

reasoned plaintiff was prejudiced because he had to file the Chancery Division action, which settled on the eve of trial, filed multiple enforcement motions, and incurred further expenses. After reviewing the record, we discern no error by the court denying appellant's motion to intervene as untimely due to her extensive delay.

Regarding appellant's interest in the property, the court found appellant had other available remedies. The court observed appellant could cross-claim against defendant in the Law Division action regarding her financial interest in the property, and she had the opportunity to file other negligence claims. The record demonstrates appellant had in fact filed third-party negligence claims against real estate agents and moved to amend her complaint to assert additional legal malpractice claims. The status of those claims is unclear from the record. In addition to appellant's untimely motion to intervene, we conclude that because the Chancery Division action was post-judgment and the Law Division matter was pending, appellant was not impeded from pursuing her financial interest in the property.

Finally, appellant's argument that the court failed to provide her notice of plaintiff's filed Chancery Division action is without merit. We note appellant cites no legal authority to support her contention that the court was required to

14

provide notice to a non-party. As explained by the court, appellant was not a party, defendant did not reveal appellant's interest until July 2022, and she did not seek to intervene until October 2023. "The minimum requirements of due process of law are notice and an opportunity to be heard." Big Smoke LLC v. Township of W. Milford, 478 N.J. Super. 203, 227 (App. Div. 2024) (quoting Klier v. Sordoni Skanska Const. Co., 337 N.J. Super. 76, 84 (App. Div. 2001)). Upon appellant's filing of a motion to intervene, the court provided her an "opportunity to be heard at a meaningful time and in a meaningful manner." Ibid. (quoting Klier, 337 N.J. Super. at 84). We conclude the court correctly denied appellant's intervention.

To the extent not addressed, plaintiff's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1260-23